IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA *
*
v. * CRIMINAL NO. 17-00164-CG
*
DERRICK MICHAEL POSEY *

## PLEA AGREEMENT

The defendant, **DERRICK MICHAEL POSEY**, represented by his counsel, and the United States of America have reached a plea agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

## RIGHTS OF THE DEFENDANT

1. The defendant understands his rights as follows:

   a. To be represented by an attorney;

   b. To plead not guilty;

   c. To have a trial by an impartial jury;

   d. To confront and cross-examine witnesses and to call witnesses and produce other evidence in his defense; and

   e. To not be compelled to incriminate himself.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

2. The defendant waives rights b through e, listed above, and pleads guilty to Count One of the Indictment, charging a violation of Title 21, United States Code, Section 846, Conspiracy to Possess with Intent to Distribute Methamphetamine.

3. The defendant understands that the statements he makes under oath in the plea of guilty must be completely truthful and that he can be prosecuted for making false

statements or perjury, or receive a perjury enhancement at sentencing, for any false statements he makes intentionally in this plea of guilty.

4. The defendant expects the Court to rely upon his statements here and his response to any questions that he may be asked during the guilty plea hearing.

5. The defendant is not under the influence of alcohol, drugs, or narcotics. He is certain that he is in full possession of his senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6. The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He has discussed the facts of the case with his attorney, and his attorney has explained to the defendant the essential legal elements of the criminal charge which has been brought against him. The defendant's attorney has also explained to the defendant his understanding of the United States' evidence and the law as it relates to the facts of his offense.

7. The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge beyond a reasonable doubt. The defendant and his counsel have discussed possible defenses to the charge. The defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice of his attorney.

8. Defendant recognizes that pleading guilty may have consequences with respect to immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which he is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no

one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

9. A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct. Alterations to the Plea Agreement or Factual Resume initialed only by the defendant and his counsel are not part of this agreement and are not agreed to by the United States.

10. This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court will impose. The defendant is pleading guilty because he is guilty.

11. The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation or prosecution of this matter. This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

## PENALTIES

12. The maximum penalty the Court could impose as to Count One of the Indictment is:

    a. 10 years mandatory minimum to life imprisonment;

    b. A fine not to exceed $10,000,000;

    c. A term of supervised release of five (5) years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, she could be imprisoned for the entire term of supervised release;

    d. A mandatory special assessment of $100.00; and

    e. Such restitution as may be ordered by the Court.

## SENTENCING

13. The Court will impose the sentence in this case. The United States Sentencing Guidelines are advisory and do not bind the Court. The defendant has reviewed the application of the Guidelines with his attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that he will not be allowed to withdraw his guilty plea if the advisory guideline range is higher than expected, or if the Court departs or varies from the advisory guideline range.

14. The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

15. The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

16. Both the defendant and the United States are free to allocute fully at the time of sentencing.

17. The defendant agrees to tender $100.00 to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the defendant fails to pay the special assessment prior to or at the time of his sentencing.

**RESTITUTION**

18. Pursuant to 18 U.S.C. §§ 3556 and 3663(A), restitution is mandatory. The defendant agrees to make full restitution in an amount to be determined by the Court at sentencing as to all relevant conduct regardless of whether it relates to the count of conviction.

## FORFEITURE

19. The defendant agrees to confess the forfeiture to the United States of all properties which represent proceeds of his criminal activities or which facilitated any aspect of these illegal activities.

## FINANCIAL OBLIGATIONS

20. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

## UNITED STATES' OBLIGATIONS

21. The United States will not bring any additional charges against the defendant related to the facts underlying the Superseding Indictment and will move to dismiss any remaining charges against the defendant once sentence is imposed in this case. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

22. The United States will recommend to the Court that the defendant be sentenced at the low end of the advisory sentencing guideline range per count of conviction as determined by the Court.

**APPLICATION OF USSG § 5K1.1 AND/OR FED. R. CRIM. P. 35**

23. The defendant understands and agrees that he has no right to cooperate, and that the decision whether to allow him to cooperate is reserved solely to the United States in the exercise of its discretion. If the United States agrees to allow the defendant to cooperate, and if the defendant agrees to cooperate, the following terms and conditions apply:

a. The defendant shall fully, completely, and truthfully respond to all questions put to him by law enforcement authorities regarding the underlying facts of the offense(s) with which he is charged, as well as the underlying facts of any criminal offense(s), state or federal, of which he has information or knowledge.

b. The defendant acknowledges that he understands that he shall provide truthful and complete information regarding any offense about which he has knowledge or information regardless of whether law enforcement authorities question him specifically about any such offense. This provision requires the defendant to divulge all information available to him even when law enforcement authorities do not know about the defendant's involvement, knowledge or information relating to any particular offense. This requirement extends to any and all persons about whom the defendant has such knowledge or information.

c. The defendant agrees to cooperate completely with all law enforcement authorities in any matters to which his cooperation may be deemed relevant by any law enforcement authority. The defendant agrees to fully

comply with all instructions from law enforcement authorities regarding the specific assistance he shall provide. This includes, but is not limited to, consenting to monitored and/or recorded telephone conversations, participating in undercover operations, testifying completely and truthfully before any grand jury, at any pre-trial proceeding, during any trial, and any post-trial proceeding.

d. If the United States deems it necessary, the defendant may be required to take a polygraph examination(s) which will be administered by a government polygrapher. The defendant agrees that the results of any polygraph examination may be used by the United States in its evaluation of whether there has been substantial assistance, and are admissible at sentencing to rebut an assertion by the defendant of bad faith or unconstitutional motive on the part of the United States.

e. The defendant agrees to turn over to the United States any and all documents, tapes and other tangible objects which are in his possession or under his control and which are relevant to his participation in and knowledge of criminal activities, regardless of whether it relates to the charged offense. This obligation is a continuing one and includes materials that the defendant may acquire, obtain or have access to after the execution of this agreement.

f. The defendant also agrees to identify the assets of any other person which were obtained through or facilitated the defendant's illegal activities or the illegal activities of another.

g. If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable. The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the defendant has provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance. The defendant also understands that, should he provide untruthful information to the United States at any time, or fail to disclose material facts to the United States at any time, or commits a new criminal offense, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the

United States, the United States agrees to recommend that the defendant receive a sentence at the low end of the advisory guideline range.

h. The United States and the defendant agree that any breach of this agreement by the defendant, including but not limited to committing a new offense, failing to cooperate, intentionally withholding information, giving false information, committing perjury, failing to identify assets obtained by him from his illegal activities or obtained by others associated with him or of which he has knowledge, refusing to take a polygraph examination, failing a polygraph examination, or refusing to testify before the grand jury or at any judicial proceeding, would:

(1) permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters underlying the Superseding Indictment; and

(2) permit the United States to initiate and proceed with the prosecution on any other charges arising from a breach of this agreement. The United States will not be limited, in any respect, in the use it may make against the defendant of any information provided by the defendant during his breached cooperation. Such breach will constitute a waiver of any claim the defendant could make under the United States Constitution, the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, or any statute or case law by which the defendant seeks to suppress the use of

such information or any evidence derived from such information.

i. Nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement, including perjury, false declaration, false statement, and obstruction of justice, should the defendant commit any of these offenses during his cooperation. The defendant acknowledges and agrees that the information that he discloses to the United States pursuant to this agreement may be used against him in any such prosecution.

j. The United States and the defendant agree that the defendant will continue his cooperation even after he is sentenced in the instant matter. His failure to continue his cooperation will constitute a breach of this agreement, and the defendant agrees that under such conditions, the United States will be free to reinstate the charges and the prosecution of the charges in the Superseding Indictment, which are to be dismissed in accordance with this agreement. Under these circumstances, the defendant expressly waives any rights he may have under the statute of limitations and the speedy trial provisions.

## LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK

24. As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge his guilty plea, conviction, or sentence in any district court or appellate court proceedings.

   a. **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

      (1) any sentence imposed in excess of the statutory maximum;

      (2) any sentence which constitutes an upward departure or variance from the advisory guideline range.

   The defendant also reserves the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion.

25. If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

26. The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the sentence.

27. If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## VIOLATION OF AGREEMENT

28. The defendant understands that if he breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement remain enforceable against the defendant. In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that he might have under the Sixth Amendment and/or Speedy Trial Act.

29. In addition, if the defendant is released from detention prior to sentencing, he understands that the United States will no longer be bound by this agreement if he violates any condition of his release prior to sentencing or prior to serving his sentence after it is imposed.

## ENTIRETY OF AGREEMENT

30. This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

Respectfully submitted,

RICHARD W. MOORE
UNITED STATES ATTORNEY

Date: November 1, 2017

GEORGE F. MAY
Assistant United States Attorney

Date: 11/1/2017

VICKI M. DAVIS
Assistant United States Attorney
Chief, Criminal Division

I have consulted with my counsel and fully understand all my rights with respect to the offense charged in the Superseding Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date:____________

DERRICK MICHAEL POSEY
Defendant

I am the attorney for the defendant. I have fully explained his rights to him with respect to the offense(s) charged in the Superseding Indictment in this matter. I have carefully reviewed every part of this Plea Agreement with him. To my knowledge, his decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, his decision to stipulate to the facts is an informed, intelligent and voluntary one.

Date:____________

ARTHUR T. POWELL, III
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. 17-00164-CG |
| | * | |
| DERRICK MICHAEL POSEY | * | |

## FACTUAL RESUME

The defendant, **DERRICK MICHAEL POSEY**, admits the allegation of Count One of the Indictment.

## ELEMENTS OF THE OFFENSE

**DERRICK MICHAEL POSEY** understands that in order to prove violation of Title 21, United States Code, Section 846, as charged in Count One of the Indictment, the United States must prove:

1. That two or more persons in some way or manner, came to a mutual understanding to distribute methamphetamine, or to possess methamphetamine with intent to distribute it;
2. That the defendant knowingly and willfully became a member of such conspiracy.

## OFFENSE CONDUCT

Defendant, **DERRICK MICHAEL POSEY**, admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for **DERRICK MICHAEL POSEY'S** plea of guilty. The statement of facts does not contain each

and every fact known to the defendant and to the United States concerning the defendant's involvement in the charges set forth in the plea agreement.

Starting in February 2015, the DEA has investigated the drug trafficking activities of Derrick Michael POSEY, Marina Naomi Adkins and their known associates. At the time POSEY was incarcerated at the Calhoun State Prison located in Morgan, Georgia and was a major broker for bulk amounts of (ICE) being distributed in Georgia, Alabama, Florida, Virginia and Tennessee. Adkins was a courier for POSEY, who resided Villa Rica, Georgia. Adkins transported bulk amounts of methamphetamine to all the above mentioned states and then collected the illicit drug proceeds for safekeeping. Joshua Blake Wise was also a business associate of POSEY who has worked with Adkins to distribute bulk methamphetamine and collect bulk illicit drug proceeds under the direction of POSEY.

On March 25, 2015, Investigator Stanley Wilson, with the Lee County Alabama Sheriff's Office, conducted a traffic stop on a 1996 Nissan Pathfinder traveling on Interstate 85 (I-85) south in Lee County, Alabama. During a search of the vehicle, incident to a K-9 indication, Wilson located and seized approximately 3.5 pounds of methamphetamine (ICE) from inside the vehicle. The driver of the Nissan Pathfinder was William Leroy Padgett, and the passenger was Timothy Wayne Holder. Padgett admitted he redistributed the bulk (ICE) he received through POSEY to a vast distribution network of individuals located in Baldwin County Alabama. On October 24, 2015, The Tuscaloosa Alabama Police Department Narcotics Unit seized approximately (3) pounds of methamphetamine from Padgett in Tuscaloosa, Alabama. During a post-Miranda interview Padgett admitted that he had continued to communicate with POSEY and had conducted numerous trips to Atlanta while on pre-trial release to obtain methamphetamine brokered by POSEY.

Padgett also admitted that he met Adkins in order to pay Adkins money that was due to POSEY for methamphetamine that had been received by Padgett. Padgett stated that he has traveled to Atlanta from Baldwin County Alabama on more than 10 occasions to conduct bulk methamphetamine transactions and to pay drug debts with Wise, Adkins and several other unknown associates of POSEY. Padgett stated that on one occasion he met Adkins in a grocery store parking lot located in Birmingham, Alabama and paid Adkins approximately $8,000.00, to be given to POSEY, for previously received methamphetamine that he redistributed in Baldwin County Alabama.

On July 28, 2015, Troup County Georgia Sgt. Nathan Taylor conducted a traffic stop on a white Chevrolet Impala bearing an Alabama License plate for a traffic violation. During the stop Sgt. Taylor seized approximately seven ounces of crystal methamphetamine from Kenneth Roy Burkett. During a post Miranda interview Burkett admitted that he made numerous trips from Baldwin County Alabama to Atlanta in order to conduct bulk methamphetamine transactions with Wise under the direction of POSEY. Burkett admitted that he redistributed the methamphetamine in the Baldwin County Alabama. Burkett stated that on two occasions, at the direction of POSEY, Burkett met with a short female (later identified as Marina Naomi Adkins) a business associate of POSEY'S. Burkett stated that the first time he met with Adkins, he paid Adkins approximately $4,000 in U.S. currency owed to POSEY for previously purchased methamphetamine that he redistributed in the Southern District of Alabama. The second time, Burkett met with Adkins to conduct a seven ounce methamphetamine transaction coordinated by POSEY. On that particular trip, Burkett was arrested in Troup County Georgia for possession of the seven ounces of methamphetamine during his return trip to Baldwin County Alabama.

On February 22, 2016, agents from the Mobile DEA Office arrested Joshua Blake Wise pursuant to an arrest warrant that was issued following his indictment in the Southern District of Alabama for conspiracy to possess with intent to distribute methamphetamine. During a post Miranda interview Wise agreed to cooperate with law enforcement. Wise has since pled guilty in connection with the ongoing multi-district drug trafficking conspiracy being operated by POSEY and Adkins. Wise admitted that sometime in the first week of July 2016, he traveled to Villa Rica, Georgia under the direction of POSEY. Wise stated that the purpose of the visit was to pick up Adkins and they were then going to travel to a vehicle auction in order to by a Honda Accord on behalf of POSEY. Wise stated that he entered the residence and walked down stairs to the lower portion of the residence where Adkins has been living. Wise stated Adkins went to the closet in her room and came out with a large bundle of cash. Wise stated that he estimated the amount to be around $11,000.00 which was the price of the car that was to be purchased. Wise was asked by Investigative team members how Adkins is able to possess that large amount of cash. Wise stated that Adkins has been transporting kilogram quantities of methamphetamine to the Chattanooga, Tennessee area and then brings the money back to the Atlanta, Georgia area. Wise stated that POSEY has told him that the illegal narcotic proceeds gained from the distribution of methamphetamine are brought back to the above mentioned address and are kept in a safe that Adkins utilizes to store POSEY'S drug proceeds.

Wise stated that on several occasions POSEY has asked him to go to Adkins residence and pick up money from her in order to purchase different items. Wise stated that the money was used for several large purchases. Wise stated that he has been directed by POSEY on several occasions to purchase zero turn lawn mowers and several vehicles.

On September 23, 2016, Wise contacted investigative team and advised them that the day before he was directed by POSEY to accompany Adkins to pick up a package. WISE stated that he and Adkins traveled approximately thirty (30) minutes from the Atlanta, Georgia area. Wise observed Adkins approach an unoccupied parked car and retrieve a package from the vehicle. Once Adkins retrieved the package she entered her vehicle and they returned to Adkins' residence located in Villa Rica, Georgia. Wise stated that he and Adkins arrived at the residence and then went down to the lower portion of the house, where Adkins was living. Wise stated that Adkins removed the contents of the package which revealed a bulk amount of U.S. currency. Wise stated that he observed Adkins count approximately $12,000.00.

On November 15, 2016, Investigative team members spoke with Wise and he stated that on the day before, he was contacted by POSEY via a Marco Polo encrypted smartphone application. Wise stated that he was directed by POSEY to accompany Adkins to pick up a package of some sort. Wise stated that he and Adkins traveled to Norcross, Georgia where they met an unknown male at in a McDonald's parking lot. Wise stated that Adkins met with the unknown male who handed Adkins a package. Wise stated that Adkins removed the contents from the package which revealed an undetermined sum of U.S. currency. Wise said that Adkins counted the money at the McDonalds and he and Adkins then returned to Adkin's residence located in Villa Rica, Georgia. Wise stated that the total count of the remaining money resulted in a total of $36,000.00.

On February 16, 2017, Investigative team members spoke with Heather Bass regarding her involvement with POSEY and Adkins. Bass has been indicted in the Middle District of Florida in connection with a multi-district drug trafficking conspiracy being operated by POSEY and Adkins. Bass said that she was introduced to POSEY by BS who was incarcerated with

POSEY in the Calhoun State Prison located in Morgan, Georgia. BS was recently transferred to the United States Bureau of Prison in Atlanta Georgia following an indictment regarding methamphetamine charges. Bass said that she was directed by POSEY on (5) occasions to work as a courier helping Adkins facilitate the transportation of bulk methamphetamine and bulk illicit drug proceeds from Georgia to Tennessee, Alabama and Florida. Bass stated that Adkins made it very apparent that she was POSEY'S girlfriend and that she handled all of his business on the outside. Bass said she was directed by Adkins to drive a black Chevrolet Impala bearing a Georgia license plate that had been outfitted with a sophisticated compartment. Bass said the methamphetamine and bulk cash received following the delivery were secreted in the sophisticated compartment and she drove from Tennessee, Alabama and Florida while being followed by Adkins in a separate vehicle.

On February 22, 2017, investigative team members executed a state search warrant at Adkin's address in Villa Rica, Georgia. During the search, team members seized approximately $32,347.00 in bulk U.S. Currency, several drug ledgers, and several vehicles. On the same date, investigative team members conducted a post Miranda interview of Adkins. Adkins stated that she met Derrick Michael POSEY on the internet and POSEY convinced her to move from California to Georgia. Adkins also stated she had driven several vehicles provided to her by POSEY to deliver narcotics and to pick up narcotics proceeds. The vehicles included a 2003 Mercedes Benz S430 and a 2008 black Chevrolet Impala. Adkins admitted that the 2008 black Chevrolet Impala had d a sophisticated compartment located under the passenger dash-board that she and other members of the POSEY organization utilized to secrete bulk illicit proceeds and bulk quantities of methamphetamine under the direction of POSEY. Adkins also stated that the 2008 Impala was referred to as the "Bat Mobile" by POSEY.

Adkins admitted that she took orders from POSEY to conduct numerous bulk cash and methamphetamine transactions in Florida, Georgia, Alabama and Tennessee. ADKINS admitted she was listed as an approved visitor on POSEY'S visitation and has visited him numerous times but in September 2016 she was prohibited after a visit that involved excessive inappropriate touching with POSEY.

Adkins stated that the most recent trip she took at the direction of POSEY involved her and Joshua Blake Wise. Adkins and Wise traveled to South Carolina to meet T.L. and then Wise drove a white Dodge Stratus back to Georgia while Adkins followed him. Adkins stated on a prior trip she and Wise traveled to the Tennessee/Alabama state-line to a parking lot to retrieve a bulk amount of US currency from a parked car. Adkins stated that POSEY provided her the location and description of the parked car and once she retrieved the money they traveled back to Georgia.

Adkins admitted that she has conducted numerous transactions involving illicit drug proceeds and transporting bulk methamphetamine under the direction of POSEY. Adkins stated that most of the time she was not aware of the amount of bulk methamphetamine she was transporting but once she retrieved the money she would count it and verify that the amount was correct with POSEY. Adkins admitted that POSEY utilizes contraband cellphones to communicate with while he is incarcerated. Adkins said she was introduced to a lady known to her as "IVY" (identified as Heather Bass) by POSEY. ADKINS admitted that her and Bass conducted 4-5 trips transporting bulk methamphetamine from Georgia to Florida, Alabama and Tennessee under POSEY'S direction. Adkins admitted that Bass drove the "Bat Mobile" with the bulk (ICE) secreted in the sophisticated concealment and Adkins followed her in a different vehicle each time. Adkins was asked where in Alabama she made the delivers to and she

remembered traveling to Mobile and Birmingham Alabama. Adkins stated she may have met customers of POSEY in other towns but Mobile and Birmingham were the big cities she traveled to under the direction of POSEY.

Adkins stated that on one occasion Bass rented a hotel room with cash and they placed the bulk methamphetamine in a Tupperware container in the hotel room. Then the hotel keycard was placed in a parked car that contained bulk U.S. currency. Adkins would contact POSEY and inform him that the package had been placed in the room and the room number. Adkins assumed that POSEY relayed this information to the unknown customer. Adkins and Bass then took the bulk proceeds back to Georgia for safekeeping. Adkins stated she drove a black Mercedes, a blue Mercedes, a black Cadillac and once drove Bass' blue Honda Accord to follow Bass while Bass drove the "Bat Mobile". Adkins stated that on other occasions she would retrieve the money and then leave the bulk methamphetamine on the passenger floor-board. Adkins stated that she paid Bass approximately 800-1000 dollars for each trip.

Adkins stated that after the 4-5 trips with Bass, Bass became pregnant and was no longer interested in conducting the trips. Adkins began conducting the trips alone. On one occasion POSEY directed Adkins to drive the "Bat Mobile" to a parking lot in Georgia and exit the vehicle. A short time later, POSEY contacted Adkins verifying the vehicle was loaded. Adkins retrieved the bulk methamphetamine from the floor board and put it in the trap. Adkins said that trap was somewhat sophisticated, she had to push a button on the dash near the passenger side, then take an auxiliary/ jumper wire and touch two screws near the dash section of the speedometer/instrument cluster and the door on the passenger dash would open. Adkins then drove the vehicle to Tennessee and delivered the methamphetamine to a parked car. Adkins retrieved money from the car and drove back to Georgia. Once Adkins arrived in Georgia,

POSEY directed her to meet an unknown Hispanic male and give him all the money retrieved from the car in Tennessee.

The United States and the defendant agree and recommend to the Court that the defendant receive a 2 level leadership role enhancement pursuant to USSG § 3B1.1 (c ).

AGREED TO AND SIGNED.

RICHARD W. MOORE
UNITED STATES ATTORNEY

Date: January 9, 2018

GEORGE F. MAY
Assistant United States Attorney

Date: 1/10/18

VICKI M. DAVIS
Assistant United States Attorney
Chief, Criminal Division

Date: ____________________

DERRICK MICHAEL POSEY
Defendant

Date: ____________________

ARTHUR T. POWELL, III
Attorney for Defendant